IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSE ENGRAM, | ) |
| Petitioner, | ) Civil Action No. 21-1834 |
| v. | ) Magistrate Judge Maureen P. Kelly |
| BERNADETTE MASON, *Superintendent, State Correctional Institution at Mahanoy*; THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA; *and* DISTRICT ATTORNEY OF ALLEGHENY COUNTY, | ) Re: ECF No. 40 |
| Respondents. | ) |

**MEMORANDUM ORDER**

Jesse Engram ("Petitioner") is a state prisoner currently incarcerated at the State Correctional Institution at Mahanoy ("SCI-Mahanoy") in Frackville, Pennsylvania. Petitioner seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254 from his state criminal convictions for Murder of the First Degree, in violation of 18 Pa. C.S.A. § 2502(a), and Firearms not to be Carried without a License, in violation of Pa. C.S.A. § 6106(a)(1), in the Court of Common Pleas of Allegheny County, Pennsylvania, at Docket No. CP-02-CR-15304-2008. ECF No. 14-1 at 8. See also Docket, Com. v. Engram, No. CP-02-CR-15304-2008 (available at https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-02-CR-0015304-2008&dnh=8ayWH8WtAzxFfOe5LrQh5w%3D%3D (last visited Dec. 6, 2023)).[1]

Currently before this Court is Petitioner's "Motion for Authorization to Conduct Deposition by Oral Examination and for Production of a Broken Disc and a Functioning Disc,"

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge on April 6, 2023. ECF Nos. 13 and 32.

("Motion for Depositions") and supporting brief.  ECF Nos. 40 and 41.  For the reasons that follow, the Motion for Depositions will be granted in part and denied in part.

**I.      RELEVENT FACTUAL AND PROCEDURAL BACKGROUND**

On July 5, 2022, Petitioner filed a Motion for Discovery, ECF No. 19, and supporting brief, ECF No. 20.  In his Motion for Discovery, Petitioner sought permission to take discovery related to video evidence that was gathered (or not) from the scene of the crime of which he was convicted, including who collected the video, how the video was collected, its chain of custody, who viewed it, and whether or not other video evidence was secured.  ECF No. 19 at 3-5.  Petitioner also sought leave to take depositions related to video evidence in that case.  Id. at 4.

After briefing by the parties, ECF Nos. 25 and 29, Petitioner's Motion for Discovery was granted in part and denied without prejudice in part on March 30, 2023.  ECF No. 31 at 13-14.  A more thorough recitation of the factual and procedural history of Petitioner's case, as well as the reasons why discovery was granted in part, may be found in the Memorandum Order of March 30, 2023.  Id.

The portion of the Motion for Discovery that was denied without prejudice was Petitioner's request for depositions, which this Court determined to be too nebulous as it initially was written.  Id. at 13.  Petitioner was granted leave to file a supplemental motion "[i]f written discovery reveal[ed] an appropriate reason to warrant depositions[.]"  Id.

On April 30, 2023, Petitioner submitted a set of proposed interrogatories and requests for production for this Court's approval.  ECF Nos. 33 and 34.  Each demand was approved, save Petitioner's Request for Production No. 3, which was not.  ECF No. 35 at 1.  Ultimately, Petitioner was granted leave to propound the following discovery requests:

2

**Request for Production of Documents**

1. Produce all documents generated or gathered or otherwise acquired by the Commonwealth with respect to the Johnson shooting and ensuing investigation that contain the words "video," "videotape," "tape," "photograph" or synonyms or abbreviations for the same.

2. Produce all documents generated or gathered or otherwise acquired by the Commonwealth relating to the seizure, storage, cataloging and accounting of all evidence gathered in relation to the Johnson shooting and ensuing investigation and/or processing of the crime scene (e.g. property receipts, documents tracking chain of custody).

**Interrogatories**

1. Provide the names of all law enforcement and/or Commonwealth agents and/or employees who were present at the scene of the Johnson shooting when it occurred.

2. A. Provide the names of all law enforcement and/or Commonwealth agents and/or employees who responded to the scene of the Johnson shooting and who assisted or participated in the processing of the scene of the Johnson shooting, including those who seized and/or acquired evidence from the scene in the immediate aftermath of the shooting or during the ensuing investigation.

B. Include the names of law enforcement and/or Commonwealth agents and/or employees who responded to the scene, but who did not assist as requested in 2A.

C. Identify any supervisory Commonwealth agents and/or employees who responded to the scene of the Johnson shooting regardless of whether they played an active role as requested in 2A.

3. A. Identify any and all video evidence that was taken from the scene of the Johnson shooting and for such video evidence indicate the identity of the person(s) who made the decision to take such evidence into the Commonwealth's possession.

B. Identify any and all video evidence that was not taken from the scene of the Johnson shooting and for such video evidence indicate the identity of the person(s) who made the decision to not take such evidence into the Commonwealth's possession[.]

    4. For any video evidence taken or not taken, as requested in number 3A and 3B, indicate the reason that said evidence was, or was not taken into the Commonwealth's possession.

    5. Provide the name of all Commonwealth agents who were responsible for the storage and safekeeping of all evidence that was gathered, seized or otherwise obtained with respect to the Johnson shooting.

    6. For any video evidence that was taken into the Commonwealth's possession but was subsequently destroyed, indicate the:

    a. evidence that was destroyed;

    b. the date of destruction;

    c. the identity of the person(s) who made the decision to not preserve said evidence; and,

    d. the reason for such destruction.

    7. For any video evidence that was taken into the Commonwealth's possession that was not subsequently destroyed, but was lost, indicate the:

    a. evidence that was lost or cannot be found;

    b. the date that the loss was discovered; and

    c. the identity of the person(s) who discovered the loss.

    8. Identify any Commonwealth agent(s) who viewed video evidence related to the Johnson shooting at any time from its seizure to the present and for any such person, indicate approximately when the video was viewed and whether it was from so-called camera 7, or from another camera.

    9. If the response to any of the Requests for Documents or Interrogatories 1-8 indicates that the requested thing or information is not available, please indicate the efforts that were made to comply with the request, including the name, title and badge number (if applicable) of any Commonwealth agent who made such efforts.

ECF No. 33-1 at 4-6.  Respondent's written responses to these discovery requests were included with Petitioner's brief in support of the instant Motion for Depositions.  ECF No. 41 at 15-21.

At least some of the documents produced by Respondents also were submitted by Petitioner in support of his Motion for Depositions. The first is entitled "City of Pittsburgh Bureau of Police Supplemental Report," dated April 20, 2010, and authored by Officer Louis Frank ("Frank"). ECF No. 41 at 11. It discusses the processing of video files taken from the scene of the murder, which were collected by Detective Chris Jordan ("Jordan"), and which were submitted for processing by Detective Brian Weismantle ("Weismantle"). Id.

The second document is entitled "Initial Report," dated June 9, 2023, and authored by Detective Jeff Skees ("Skees"). Id. at 23-24. It recites tasks performed to prepare Respondents' discovery responses – including an unsuccessful attempt to interview Detective Dale Canofari ("Canofari") regarding whether any additional video footage or camera angles existed of the murder. Id. at 23-24. Skees indicated that he would interview Canofari at a later date. Id. at 24. There is no indication on the record whether that interview ever took place.

Petitioner timely filed his Motion for Depositions and supporting brief on August 15, 2023. ECF Nos. 40 and 41. Respondents responded in opposition on August 30, 2023. ECF No. 43. Petitioner replied on September 13, 2023. ECF No. 45. Respondents filed a sur-reply, without leave of Court, on September 18, 2023. ECF No. 46. In response to this Court's Order dated September 19, 2023, ECF No. 47, Petitioner and Respondents each submitted supplemental briefing on October 4 and 17, 2023, respectively. ECF Nos. 51 and 52.

In the Motion for Depositions, Petitioner seeks to be "authorized to conduct the depositions of William Wagner, David Rose, Willie Dillard, Dale Canofari, Brian Weismantle, Chris Jordan, Christopher David, and Frank Louis[.]" ECF No. 40-1 at 1. Petitioner also seeks production of a new copy of a compact disc that Respondents initially produced in response to

the Memorandum Order of March 30, 2023, as well as access to a second, broken compact disc that was found in the prosecution's files.  ECF No. 40 at 1-2.

The Parties' briefing on the Motion for Depositions has narrowed the relief sought by Petitioner.  Petitioner has conceded in his reply that Respondents now have provided both of the previously-requested compact discs.  ECF No. 45 at 1-2.  Petitioner also has acknowledged that that "Frank Louis" actually is named "Louis Frank."  Id. at 3.  In his supplemental briefing, Petitioner further conceded that his request to depose "Christopher David" was moot as well. ECF No. 51 at 1.  It also is noteworthy that Petitioner concedes that Respondents are not currently suppressing any video evidence, but believes that additional evidence initially was gathered.  ECF No. 51 at 2.

As the matter currently stands, Petitioner still seeks leave to depose the following individuals: Canofari, Weismantle, Jordan, Frank, William Wagner ("Wagner"), David Rose ("Rose"), and Willie Dillard ("Dillard").  Petitioner indicates that he would limit his depositions to 60 minutes, and is amenable to conducting the depositions remotely.  ECF No. 41 at 7.

Petitioner's Motion for Depositions is ripe for consideration.

## II. LEGAL ANALYSIS

As this Court explained in its Memorandum Order dated March 30, 2023, ECF No. 31, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997); Harris v. Nelson, 394 U.S. 286, 297 (1969) ("broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas corpus proceeding.").  Discovery is authorized in Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Court only by leave of court upon a showing by the petitioner of "good cause," which may be made "where specific

allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief[.]" Harris, 394 U.S. at 300; see also Bracy, 520 U.S. at 908-09; Lee v. Glunt, 667 F.3d 397, 404 (3d Cir. 2012).

"[A] petitioner need not demonstrate that additional discovery will **definitively** lead to relief. Rather, a petitioner 'need only show good cause that the discovery will lead to relevant evidence regarding his petition.'" Brown v. May, No. 21-200, 2022 WL 7710986, at *1 (D. Del. Sept. 13, 2022) (quoting Williams v. Wetzel, No. 11-4681, 2021 WL 1224130, at *2 (E.D. Pa. Mar. 31, 2021)) (emphasis added).

"The burden rests upon the petitioner to demonstrate that the sought-after information is pertinent and that there is good cause for its production." Williams v. Beard, 637 F.3d 195, 209 (3d Cir. 2011). "[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery" Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991); Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987) (same). Additionally, Rule 6 does not authorize what is commonly referred to as "fishing expeditions" and it is not enough for a petitioner to speculate that the discovery he seeks might yield information that would support one of his claims or that it would give support to a new claim. See, e.g., Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994) (quoting with approval Munoz v. Keane, 777 F. Supp. 282, 287 (S.D.N.Y. 1991) ("petitioners are not entitled to go on a fishing expedition through the government's files in hopes of finding some damaging evidence"); see also Rega v. Wetzel, No. 13-cv-1781, 2014 WL 4079949, at *2 (W.D. Pa. Aug. 18, 2014); see also Tedford v. Beard, No. 09-cv-409, 2010 WL 3885207, at *4 (W.D. Pa. Sept. 28, 2010) ("Because a petitioner in a § 2254 case must first exhaust any claim in state court before he brings it in federal court, a

federal court must, in considering a state prisoner's motion for discovery, take into account any lack of diligence on the petitioner's part in developing the record in state court.").

Further, where an assessment of a habeas petition reveals that it fails on some legal ground, the proper course is to deny motions seeking factual discovery. Brown v. DiGuglielmo, No. 07-3465, 2007 WL 4242266, *1 n.2 (E.D. Pa. Nov. 29, 2007) (citing Williams v. Bagley, 380 F.3d 932, 974-76 (6th Cir. 2004)) (noting that discovery requests relating to procedurally defaulted claims were properly denied because discovery could not lead to a colorable basis for relief on those claims); Peterkin v. Horn, 30 F. Supp. 2d 513, 518-20 (E.D. Pa. 1998) (same).

### A. Permission to Depose Wagner, Rose, and Dillard will be Denied.

First, Petitioner has not established that his request to depose Wagner, Rose, and Dillard is at all related to his Motion for Discovery. To the contrary, in the Motion for Discovery, Petitioner explicitly request that this Court

> f) [p]ermit the taking of a reasonable number of depositions of law enforcement personnel **who can explain how the video evidence was handled in this case and secured, or not secured**.

ECF No. 19 at 4 (emphasis added). In the proposed order attached to the Motion for Discovery, Petitioner submitted the following proposed language:

> The Motion is GRANTED. With respect to the video evidence either gathered and preserved, gathered and destroyed or not gathered, Petitioner's counsel may propound interrogatories, make document requests **and take the deposition of those with knowledge of the video evidence**.

ECF No. 19-1 at 1 (emphasis added).

However, in his opening brief, Petitioner concedes that he is not interested in these witnesses' knowledge of the video evidence that may or may not have existed. ECF No. 41 at 6. Instead, he wishes to depose them in order to impeach Wagner's identification of Petitioner at trial. ECF No. 41 at 6-7. See also Trial Tr. dated Nov. 8-12, 2010, at 31-72. This is beyond the

scope of the relief which was granted by this Court in its Memorandum Order of March 30, 2023.  ECF No. 31.  Indeed, as set forth above, it is beyond the scope of the relief sought by Petitioner in his underlying Motion for Discovery.  ECF No. 19 at 3-4.  Petitioner further has not shown that the written discovery responses produced to date warrant these depositions, as required by the Memorandum Order of March 30, 2023.  ECF No. 31 at 13.

As this Court explained in its Order of March 30, 2023, discovery under Rule 6 of the Rules Governing Section 2254 Cases is limited, and fishing expeditions are not permitted.  Id. at 10-11 (citing cases).  But here, a fishing expedition is exactly what Petitioner is asking this Court to allow with respect to Wagner, Rose, and Dillard.

Petitioner relies on declarations of Petitioner's private investigators submitted along with the underlying Motion for Discovery as justification for these depositions.  ECF No. 41 at 6-7 (citing ECF Nos. 29-1 and 29-2).  But, as Respondents accurately point out, while these declarations provide hearsay statements of what Dillard and Rose allegedly themselves saw the night of the shooting, they only speculate as to what Wagner himself might have been able to see.  ECF No. 43 at 12-13.

With respect to the declaration of Alex R. Wiseman dated October 31, 2022, regarding his interview of Dillard, Paragraphs 6 - 8 thereof are exemplary:

> 6. Mr. Dillard recalled the shooter coming from across the street and walking directly towards the SUV. **The way he and his partners were situated in the store, they had a clear unobstructed view of the shooting. He explained that if you are looking out of the store window, the front of the SUV was pointed towards the store. Based on this setup, the officers saw the side profile of the shooter, but the face was obstructed by the hood he was wearing. After the shooting, Officer Wagner chased after the shooter while Mr. Dillard went to assist the victim.**

9

> 7. Mr. Dillard pointed out that the officers would have been in their right to fire at the shooter. "We did not have an opportunity to unless we shot him in the back, which I personally would not have done," he told me. He expected to hear gunshots from Officer Wagner's chase, but never heard any. Officer Wagner returned to the scene minutes later without the suspect. I asked Mr. Dillard if he could have made an identification of the shooter. He responded, **"no way any of us could have made an ID." He added that although the gas station was lit up, it was dark outside and the hoodie over the shooters face made it impossible.**
>
> 8. **Mr. Dillard said he was surprised to learn from a prior defense investigator that Officer Wagner was involved in the case and eventually made an identification. He mentioned that from the time of the shooting to when he received the phone call a few years ago, he had never heard anything about this case.**[2] He was never called by the prosecutor and the officers investigating never took a formal statement. He recalled telling the detectives at the scene what he saw, but never gave an official statement. Mr. Dillard said, **"I would be interested in what Billy said on the stand because I don't see how he could have made an ID, the three of us saw the same thing. I cannot say for sure he didn't see him when he chased him, but I assume the shooter got in his car and drove away before Billy could see him."** He added that if Officer Wagner took the stand to identify the shooter from what he saw in the store, "that is a real shame" and **"no way he could have IDed him."** He guessed that Officer Wagner was contacted right before trial to make that ID.

ECF Nos. 29-1 at 3 (emphasis added). While these statements express an opinion on what Wagner could have seen, none of what Dillard said was from Wagner's perspective. The declaration does not indicate that Wagner was not present, or behind a counter, or assert any other fact that necessarily would have precluded his ability to have made the identification from

---

[2] Although not specifically addressed in the Parties' briefing, the discussion that occurred between Dillard and a prior defense investigator sometime between Wagoner's identification of Petitioner, and "a few years" before Alex R. Wiseman's 2022 declaration, seems relevant to the analysis of whether the defense is at fault for failing to develop this evidence in the state courts. 28 U.S.C. § 2254(e)(2). See also ECF No. 14-1 at 424-25 (police reports dated September 22 and 23, 2008, related to interviews with Rose and Dillard, attached as exhibits to Petitioner's counseled PCRA Petition in the context of calling into question the veracity of Wagner's identification of Petitioner at trial). Id. at 384, 399-406.

10

his observations the night of the murder. Instead, it relays Dillard's assumptions based on his own point of view. This is not enough to establish good cause.

The declaration of Keri Bozich dated October 31, 2022, regarding her interview of Rose, provides even less support for the requested deposition, as it does not so much as speculate on what Wagner might have seen, and mentions him only to state that he pursued the shooter. ECF No. 29-2. To the extent that Petitioner relies on it, the Keri Bozich's 2019 declaration with respect to the owner of the Sunoco similarly does not support the depositions of Wagner, Rose, and Dillard. ECF No. 51 at 3 (citing ECF No. 29-4 ¶ 7).

Petitioner has not cited to any discovery response that indicates that Wagner, Rose, and Dillard have any knowledge related to videos of the shooting. Given Petitioner's concession that he cannot prove that Wagner lied at trial, id. at 3, he has not provided sufficient justification to bootstrap the depositions of Wagner, Rose, and Dillard from the specific relief granted by this Court on March 30, 2023. Nor has Petitioner otherwise provided good cause to allow these depositions. Accordingly, this Court will not permit Wagner, Rose, and Dillard to be deposed.

### B. Permission to Depose Canofari, Jordan, and Frank will be Granted. The Request for Weismantle's Deposition will be Denied.

The requested depositions of Canofari, Weismantle, Jordan, and Frank are a different matter. Respondents' written responses indicate that Jordan collected the video evidence that underlies the discovery sought by Petitioner, and that Frank processed it. ECF No. 41 at 11; ECF No. 52 at 11. They also indicate that Respondents thought that it was advisable to discuss their discovery responses with Canofari – a former lead investigator on Petitioner's underlying criminal case – but were unsuccessful in their attempts to do so. ECF No. 41 at 21 and 23-24. It is noteworthy that Respondents were unable fully to answer Interrogatory No. 4 – which requested the reason why video evidence was or was not taken from the scene of the murder –

without "speculat[ing on] the reasons detectives had for gathering or not gathering certain video evidence." Id. at 19.

Further, Respondents indicate that in their written responses that Canofari currently is a detective with the Allegheny County Police – and thus presumably available for interview and deposition. Id. at 20.

It is not unreasonable to believe that Canofari, as a lead investigator in Petitioner's underlying murder investigation, might have information relevant to answering the same. See Trial Tr. dated Nov. 8-12, 2010, at 165 (testimony of Canofari that he and Weismantle were the two lead investigators); id. at168-69 (testimony of Canofari regarding video evidence from the night of the murder).

The written discovery responses also indicate the video evidence from the scene of the murder was collected by Jordan, and processed by Frank. ECF No. 41 at 11-12.

Here, the written discovery provided by Respondents justifies the depositions of Jordan, Frank, and Canofari – especially in light of Petitioner's willingness to limit the length of time that they will be deposed, and his amenability to remote depositions. ECF No. 41 at 7. Despite being a lead investigator, the written discovery with respect to Weismantle does not support his deposition at this time, because it indicates only that his involvement with the video evidence was to submit it for processing. Id. at 11.

### III. CONCLUSION

For the reasons set forth herein, Petitioner's Motion for Depositions, ECF No. 40, will be granted in part and denied in part, as stated herein.

An appropriate Order follows.

AND NOW, this 6th day December, 2023, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Petitioner's Motion for Authorization to Conduct Depositions by Oral Examination and for Production of a Broken Disc and a Functioning Disc, ECF No. 40, is GRANTED in part and DENIED in part.

Petitioner is authorized to depose Chris Jordan, Louis Frank, and Dale Canofari. Unless otherwise agreed by the Parties and the deponent, each deposition shall be limited to 60 minutes as suggested by Petitioner in his initial brief. ECF No. 41 at 7. All depositions shall be limited in scope to the proffer offered in Petitioner's supporting brief, absent prior authorization from this Court. Id.

IT IS FURTHER ORDERED that discovery is extended to **February 6, 2024**.

IT IS FURTHER ORDERED that all other requested relief is DENIED.

IT IS FURTHER ORDERED that counsel for the parties must confer on discovery disputes prior to seeking the Court's intervention. If the parties cannot resolve their dispute, they must contact the Court to set up a telephone conference in an effort to resolve the matter prior to filing a formal motion. Failure to follow this procedure will result in denial of any discovery motion without prejudice.

BY THE COURT:

*/s/ Maureen P. Kelly*
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:   All counsel of record (*via* CM/ECF)